Houston & Texas Central Railroad Company et al. v. W. J. Everett.

No. 1470. Decided November 6, 1905.

**1.—Cattle Shipment—Damages—Connecting Lines—Burden and Degree of Proof.**

A charge holding the terminal carrier liable for all the damages occasioned in a shipment of cattle over several connecting lines unless it should "satisfy" the jury by evidence that the damage occurred on one of the other lines, placed on such defendant a greater burden than the law requires. (Pp. 274, 275.)

**2.—Cattle Shipment—Contract—Choice of Lines.**

Where a shipper demanded transportation of his cattle over the shortest route by connecting lines to their destination at a fixed through rate, but there was no custom or arrangement by which the initial carrier could contract for carriage over such lines at the rate named, and the shipper accordingly accepted a routing over other and longer connections making such through rate, neither of the connecting lines could be held liable for damages from the delay incident to adopting the longer line. (Pp. 275, 276.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Llano County.

Everett sued the three defendant railway companies and recovered

judgment, from which they appealed, and, on affirmance, obtained writ of error.

*S. R. Fisher* and *J. H. Tallichet,* for plaintiffs in error (*Baker, Botts, Parker & Garwood,* of counsel).—Plaintiff's demand being for cars in which to ship his cattle from Llano, Texas, to Fairfax, Oklahoma, and the line of defendant's railroad, as appears from the petition and as the court judicially knows, not extending beyond the State of Texas, said demand for cars was not in conformity or compliance with the terms of arts. 4497 to 4502, inclusive, of the Revised Statutes of Texas, said statutes not requiring railroad companies to furnish cars to be used beyond their own line of railroad, and on and over the lines of other railroads, and beyond the limits of the State of Texas. Rev. Stat. Texas, arts. 4497 to 4502; Acts 1899, p. 67; Houston, E. & W. T. Ry. Co. v. Campbell, 91 Texas, 551; McCarty v. Gulf, C. & S. F. Railway Co., 79 Texas, 38; Schloss v. Atchison, T. & S. F. Railway Co., 85 Texas, 601; Bonner v. Association, 23 S. W. Rep., 317; Gulf, C. & S. F. Railway Co. v. Gray, 87 Texas, 312; Gulf, C. & S. F. Ry. Co. v. Baird, 75 Texas, 264; Austin & N. W. Ry. Co. v. Slator, 26 S. W. Rep., 233; Hunter v. Southern Pac. Ry. Co., 76 Texas, 197; Fort Worth & D. C. Railway Co. v. McAnulty, 26 S. W. Rep., 415.

Articles 4497 to 4502, inclusive, of the Revised Statutes of Texas, being highly penal in character and in derogation of common law, must be strictly construed. The courts can not usurp the province of the Texas legislature and indulge in legislation against railroads. It can not be held, therefore, that by implication said statutes require that cars be furnished on demand for use beyond the line of railroad furnishing them. Farmers' Bank v. Dearing, 91 U. S., 29; Galveston, H. & S. A. Ry. Co. v. LeGierse, 51 Texas, 189.

A railroad company can not be required to contract for the transportation of freight beyond its own line of railroad, and a fortiori, it can not be compelled to furnish cars to be used beyond its own line in making such a shipment, nor can a penalty be recovered for its failure or refusal to furnish its cars for such purpose. Gulf, C. & S. F. Ry. Co. v Baird, 75 Texas, 264.

It is held that if a railroad voluntarily complies with a request for a car to be used in making a shipment to a point beyond its own line of railroad, it becomes liable for injuries arising on other railroads by reason of any defect in said car, although ordinarily it would not be so liable. This is not a liability arising out of said company's character as a common carrier, but out of contract, express or implied. But while a railroad company may make such a contract, it can not be compelled to do it. The statutes in question do not purport to extend the liability of railroad companies beyond their own lines, and they can not be construed as requiring them to comply with demands for cars to be used beyond their termini, and thereby assume the extraordinary liability herein referred to. International & G. N. Ry. Co. v. Aten, 9 Texas Ct. Rep., 742.

If the statutes in question be construed as requiring railroad companies to furnish cars to be used over other lines of railroad than their

own, and in other states than Texas, then they would require railroads running into or through cattle shipping districts, or oil shipping districts, or districts in which any other commodity exists in large quantities, to furnish at an immense expense, otherwise unnecessary, rolling stock suitable for handling such commodities to all the railroads in the country, and said statutes would be, and if so construed are, in violation of and contrary to art. 1, sec. 19, of the Constitution of the State of Texas, and in violation of and contrary to sec. 1 of the fourteenth amendment of the Constitution of the United States, because said statutes, so construed, operate to deprive this defendant and railroad companies in general of their property without due process of law.

The court erred in overruling said special exception because arts. 4497 to 4502 of the Revised Statutes of Texas, if construed to apply to interstate shipments, are in violation of and contrary to the Constitution of the United States, because they constitute an attempted regulation of interstate commerce. Rev. Stat. 1895, arts. 4497 to 4502; Acts 1899, p. 67; Gulf, C. & S. F. Ry. Co. v. Crossman, 33 S. W. Rep., 290; Texas & P. Railway Co. v. Avery, 33 S. W. Rep., 704; Houston Direct Nav. Co. v. Insurance Co. of N. America, 89 Texas Rep., 1; Missouri Pac. Ry. Co. v. Sherwood, 84 Texas, 134; Gulf, etc., Ry. Co. v. Barry, 45 S. W. Rep., 814; U. S. Compiled Statutes 1901, vol. 3, pp. 3174, 3175; Ibid, Supplement 1903, p. 367.

The court erred in giving special instruction No. 1, asked by plaintiff, and in refusing special instruction No. 1, asked by defendants, because it appeared from the evidence that plaintiff's cattle were properly transported by way of Brenham, plaintiff having not tendered in advance the freight charges for the transportation of his cattle by way of Lampasas or McNeil, and having demanded that his cattle be waybilled through by said routes at the Brenham rate, which was not shown to apply by said routes, by which freight could not, under the rules of the carriers, be billed through; and because it further appeared from the evidence that the plaintiff had refused to have his cattle shipped by the routes desired by him at local rates or under local billing.

The court erred in refusing to give defendant's special instruction because the same would have correctly advised the jury that if the plaintiff demanded of the Houston & Texas Central Railroad Company that his cattle be routed by way of Lampasas, or by way of McNeil and Milano, and that said cattle be waybilled through at the rate of $63.25 per car, and that if under the rules and regulations of defendant and its connecting carriers in force at said time said cattle could only be waybilled through at said rate, under said rules and regulations, by way of Brenham, that the plaintiff could recover no damages for injuries to his cattle caused by their transportation by the Brenham route. This issue was raised by the pleadings and the evidence, but was ignored by the court.

Duty to charge on issue raised by pleading and evidence. Southern, etc., Ry. Co. v. Sage, 11 Texas Ct. Rep., 977; Missouri, K. & T. Ry. Co. v. Renfro, 11 Texas Ct. Rep., 314; Houston & T. C. Ry. Co. v. Jones, 11 Texas Ct. Rep., 315; Freeman v. Carter, 10 Texas Ct. Rep., 497; Heatherly v. Little, 40 S. W. Rep., 445; Smithwick v. Andrews,

24 Texas, 495; Barkley v. Tarrant Co., 53 Texas, 256, 257; Houston, E. &. W. T. Ry. Co. v. Adams, 63 Texas, 206; Texas & P. Ry. Co. v. Scott, 64 Texas, 551; Leach v. Wilson Co., 68 Texas, 355; Wegner v. Biering, 73 Texas, 89; East Line, etc., Ry. Co. v. Smith, 65 Texas, 171; Diamond Mill Co. v. Groesbeck National Bank, 29 S. W. Rep., 169; Houston & T. C. Ry. Co. v. Stewart, 37 S. W. Rep., 770; McCarty v. Houston & T. C. Ry. Co., 54 S. W. Rep., 421; Missouri, etc., Ry. Co. v. Wylie, 33 S. W. Rep., 772; Missouri, K. & T. Ry. Co: v. McGlamory, 89 Texas, 635.

The court erred in its charge on the law of the case, because the same advises the jury that the burden rests upon the last carrier, the Atchison, Topeka & Santa Fe Railway Company, to show from the evidence that the alleged damage to plaintiff's cattle occurred on the line or lines of some other carrier, and that the same rule would also apply to the next preceding carrier, because said charge is calculated to·cause the jury to believe that the evidence referred to must be adduced by the defendants, and to cause them to ignore plaintiff's.  Texas & P. Railway Co. v. Reed, 88 Texas, 439; St. Louis & S. W. Railway Co. v. Martin, 63 S. W. Rep., 1089; International & G. N. Railway Co. v. Lewis, 63 S. W. Rep., 1092.

The court erred in said paragraph of its charge to the jury, because the same advises the jury that they must find against the two last carriers, the two Santa Fe companies, unless the evidence should satisfy them that the damage to said cattle did in fact result from the negligence of another carrier, because it would be sufficient to clear both said defendants from liability if the jury believed, from the preponderance of the evidence, ·merely that said damage was caused by the negligence of such other carrier, and not of said defendants, or either of them. Galveston, H. & S. A. Railway Co. v. Matula, 79 Texas, 577; Willis v. Chowning, 90 Texas, 617; Wallace v. Berry, 83 Texas, 328; Baines v. Ullman, 71 Texas, 529; Prather v. Wilkens, 68 Texas, 189; Houston & T. C. R. Co. v. Buchanan, 11 Texas Ct. Rep., 1004.

*McLean & Spears,* for defendant in error.—Whether plaintiff's demand for cars was verbal or written, and without regard to whether the point of destination was upon or beyond the terminus of the railroad of the defendant, Houston & Texas Central Railroad Company, when made in due time to its local agent at Llano, it became said defendant's duty as a common carrier, independent of statutory obligations, to furnish at the time and place named suitable cars in which to ship plaintiff's cattle, whether its agent agreed to furnish them or not, and the statutes referred to placed no restrictions upon defendant in the exercise of its right to limit the use of said cars to its own line.  McCarn v. International & G. N. Ry. Co., 84 Texas, 358; Gulf, C. & S. F. Ry. Co. v. Baird, 75 Texas, 264; Easton v. Dudley, 78 Texas, 238; Hunt v. Nutt, 27 S. W., 1031; Myrick v. Michigan Cent. Railway Co., 107 U. S., 106; Newport News & M. V. R. R. Co. v. Mercer, 29 S. W., 302; Pittsburg, C. & St. L. R. W. Co. v. Morton, 61 Ind., 539; Chicago, St. L. & P. R. Co. v. Wolcott, 141 Ind., 267; 5 Am. & Eng. Encyc. (2d ed.), 175, 430; 6 Cyc., 372.

The application does not, in terms or by implication, require defendant to furnish cars to be carried or used beyond its line of railroad, or to contract for transportation beyond its own line, or to furnish cars for use on the lines of its connecting carriers, and arts. 4497 to 4500 only required defendant to do that which would have been its duty if there had been no such statutes, and in addition provide penalties for refusal to perform such duty upon proper and timely application by the shipper for cars.  Arts. 4497 to 4500, and authorities under next preceding proposition.

Arts. 4497 to 4500, inclusive, merely prescribe safeguards and precautions foreseen and proper to prevent by anticipation the wrongs and injuries incident to the failure or refusal of the initial carrier to furnish cars upon seasonable application made, which, after they have been inflicted, the state has power to redress and punish, and are strictly within the scope of the local law, and, so long as congress had not legislated upon the particular subject, are to be regarded as in aid of interstate commerce, and as a rightful exercise of the police power of the state to regulate the relative rights and duties of all persons and corporations within its limits.  Houston & T. C. R. R. Co. v. Mayes, decided by this court October 19, 1904; Armstrong v. Galveston, H. & S. A. Ry. Co., 92 Texas, 121; Texas & P. Ry. Co. v. Walker, 60 S. W., 797; Gulf, C. & S. F. Ry. Co. v. Dwyer, 75 Texas, 581; Chicago, M. & St. P. Ry. Co. v. Solan, 169 U. S., 133; Richmond & A. R. Co. v. R. A. Patterson Tobacco Co., 169 U. S., 311; Missouri, K. & T. Ry. Co. v. McCann, 174 U. S., 580; Western U. Tel. Co. v. Call Publishing Co., 181 U. S., 92.

The character of interstate commerce can not attach to railroad cars until they are loaded within the state with property to be shipped by a continuous trip to point beyond the limits of the state, and arts. 4497 to 4500, Revised Statutes of Texas, providing for a penalty for failure to furnish cars, whether the proposed shipment be intrastate or interstate, are in no sense an attempt to regulate interstate commerce.  Houston Direct Nav. Co. v. Insurance Co. of N. A., 89 Texas, 1; Am. & Eng. Encyc. (2d ed.), 64, 70.

The plaintiff's pleadings and the evidence show that his cattle were damaged by reason of shipping by way of Brenham instead of by one of the other shorter and more expeditious routes named in his petition, and this issue was properly submitted to the jury by special instruction No. 1, requested by plaintiff, and authorized the refusal of special instruction No. 1, requested by defendants.  Wells, F. & Co.'s Express v. Fuller, 4 Texas C. A. 223; Gulf, C. & S. F. Ry. v. Irvin, 73 S. W., 540.

The evidence showed that plaintiff's cattle were received in good condition, and that one steer died between Llano and Brenham, and if the defendant would avoid liability therefor, they must show that said steer's death was not the result of their negligence.  Texas & P. Ry. Co. v. Richmond, 94 Texas, 571.

BROWN, ASSOCIATE JUSTICE.—The following statement of the case and of the evidence will be sufficient for the purposes of this opinion:

Everett was the owner of certain cattle which he desired to ship from the town of Llano, in Texas, to Fairfax, in Oklahoma Territory, and presented to the agent of the Houston & Texas Central Railroad Company at Llano the following writing: "Llano, Texas, April 8, 1903. Mr. E. W. Tarrence, Agent Houston & Texas Central Railroad Company, Llano, Texas. Dear Sir: For the purpose of making a shipment of cattle from Llano, Texas, to Fairfax, Oklahoma Territory, I desire thirteen cars at Llano on the 14th day of April, 1903. I herewith tender you one-fourth of the freight charges for the use of the cars. (Signed) W. J. Everett." The railroad company failed for one day to furnish the cars in accordance with the demand; but having furnished the cars the next day, the cattle were loaded at Llano and shipped over the Houston & Texas Central Railroad to Brenham, thence by the Gulf, Colorado & Santa Fe and the Atchison, Topeka & Santa Fe Railroads to their destination. When the application for the cars was made, Everett informed the agent that he wished to send his cattle by Lampasas, thence over the Gulf, Colorado & Santa Fe Railroad; or by McNeil, and then to Milano Junction and over the Santa Fe. He inquired as to the through rate of freight from Llano to Fairfax, and was told that it was $63.25 by Brenham. The agent told him that he had no through rate by Lampasas or McNeil, but that he thought he could get the same rate by either route. Before the cattle were loaded Everett again inquired of the agent as to the rate, and was informed that there was no through rate by Lampasas or by McNeil, and that he could not give a through waybill to the place of destination by either of those routes, but that he could give him a through waybill by Brenham, thence over the Gulf, Colorado & Santa Fe, at the rate stated. Everett was not satisfied with having to go by Brenham, but finally signed the contract. At that time the agent at Llano had no authority to make a through rate from Llano to Fairfax except by Brenham, and then over the Gulf, Colorado & Santa Fe, and had no authority from either of the other roads to make a contract for the through carriage of the cattle, except as above stated. The distance by Brenham was something over two hundred miles further than by either of the other routes; the cattle were on the road from Llano to Fairfax sixty-two hours. They could have been delivered by ordinary care and diligence over either of the other routes within thirty-two to forty hours. The cattle were damaged by delay caused by the greater distance they were carried, and were also damaged by delay and the manner of handling them upon the connecting lines. Everett brought this suit to recover of the plaintiffs in error for damages to his cattle on account of the delay and the manner of handling them on the way, and also to recover of the Houston & Texas Central Railroad Company the penalties for failure to deliver the cars according to the demand made.

Upon the trial the court gave to the jury the following charge: "You are instructed that if you find that plaintiff's cattle have been damaged by the negligence of defendants, then such damages, if any, are presumed in the law to have occurred by the negligence, if any there was, of the last carrier receiving said cattle; and it would devolve upon such last

connecting carrier to show from the evidence that such damages, if any, occurred on the line or lines of some other connecting carrier, in order for it to be relieved from being responsible for such damages, if any, as may have been shown to have been incurred from negligence, if any, while said cattle were in transit; and the same rule would apply with each last connecting carrier that handled said cattle, unless the evidence satisfies you that the damages, if any, did in fact result from the negligence, if any, of one or more of said defendants on their respective lines of railroad; and then if the evidence so shows, you will apportion the damages, if any, between the respective defendants according to such damages, if any, as resulted from the acts of negligence, if any, that occurred on their respective lines of railroad, and for no more." In this charge the court tells the jury, in effect, that the last carrier, which was the Atchison, Topeka & Santa Fe Railroad Company, was liable for all the damages which occurred to the cattle in the course of shipment, unless it "should *satisfy*" them by the evidence that the damage occurred on one of the other connecting lines. This charge placed upon the connecting carriers a greater burden than the law requires. Willis v. Chowning, 90 Texas, 617; Galveston, H. & S. A. Railroad Co. v. Matula, 79 Texas, 577. The charge was such error as requires a reversal of this judgment.

The Houston & Texas Central Railroad Company requested the court to charge the jury as follows: "You are instructed that if you believe from the evidence that the plaintiff, W. J. Everett, demanded of defendant, the Houston & Texas Central Railroad Company, that his cattle be routed by way of Lampasas, or by way of McNeil and Milano, and that said cattle be waybilled through at the rate of $63.25 per car, and if you further believe from the evidence that under the rules and regulations of said defendant and of the connecting carriers in force on April 15, 1903, such cattle could not be waybilled through by either of said routes, and that said cattle could only be waybilled through at said rate by said defendant, under such rules and regulations, by way of Brenham, then the plaintiff can recover no damages, if any, which may have been suffered by said cattle on account of their transportation by way of Brenham." If the facts grouped in the charge be true, then neither of the railroad companies in this case could be liable for damages caused by carrying the cattle by way of Brenham instead of by a shorter route; and as the evidence was sufficient to authorize the jury to find the facts stated in the charge, the court erred in not submitting the issue.

When Everett demanded of the agent of the Central Railroad Company a through waybill and contract of shipment, with a fixed rate for the entire trip, the agent of that company could not, in compliance with the demand, ship the cattle over any route other than that for which he had authority from the connecting lines to make such a contract. The condition that Everett placed upon the acceptance of the cattle, of giving a through way-bill and through rate, necessarily designated the route by Brenham, that being the only route over which such rate and waybill could be given. We think that it is well settled by the authorities, although there is some conflict, that in the absence of any

agreement or custom or course of dealing from which authority could be implied, the initial carrier has no power to make any contract which would bind the connecting carrier. If the connecting carrier be so situated in relation to the initial line that the law requires it to receive and carry such freight, then such carrier would be liable if it should refuse to do so, and if negligent, would be liable for damages under the law; but the liability would not be based upon the unauthorized contract made by the initial carrier. Gulf, C. & S. F. Ry. Co. v. Dwyer, 84 Texas, 194; 5 Am. & Eng. Encyc. Law, p. 459; Crossan v. New York & N. E. Ry. Co., 149 Mass., 196.

The writ of error was granted in this case because the demand was made for cars to go beyond the line of the Houston & Texas Central Railroad Company; but the point was made on the allegations of the petition, which are materially different from the written demand; and as the case must be remanded for another trial, and the party may eliminate that question by an amendment to the pleadings, we find it unnecessary to discuss it here.

For the errors stated, the judgments of the district court and Court of Civil Appeals are reversed and the cause remanded.