MOORE et al. v. COLEMAN et al.
(No. 706.)

(Court of Civil Appeals of Texas. El Paso. May 3, 1917. On Rehearing, May 17, 1917.)

1. NUISANCE ⬅75—ABATEMENT—EVIDENCE.
    An injunction should not issue to restrain the operation of a cotton gin in a city in the absence of a showing that the evils anticipated from the construction and operation thereof are imminent and certain to occur, it not being sufficient that they may probably do so.
    [Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–184.]

2. APPEAL AND ERROR ⬅1050(1)—HARMLESS ERROR—ADMISSION OF TESTIMONY.
    In a suit to restrain the operation of a cotton gin as a nuisance within the limits of a city, evidence by a medical expert that the operation of the gin would injure the health of the residents of the surrounding territory, and would destroy the comfort and pleasure of their homes, though inadmissible as invading the province of the jury, its admission was harmless

error where a former witness had given the same testimony without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153, 4157.]

3. EVIDENCE ⊂⊃501(7) — OPINION EVIDENCE —ADMISSIBILITY.

In a suit to restrain the operation of a cotton gin as a nuisance, evidence of a medical expert that in his opinion the operation of the gin would affect the value of the surrounding property and be a detriment to the neighborhood for residence purposes was not inadmissible as opinion evidence, where the facts upon which such opinion was based were also given.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2303.]

4. NUISANCE ⊂⊃75—ABATEMENT—EVIDENCE.

In a suit to restrain the operation of a cotton gin as a nuisance, it was not error to admit evidence as to the number of teams that would probably congregate at the gin daily, and that as a consequence thereof the ground would be covered and impregnated with the natural excretions of the teams, producing an odor and flies.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–184.]

5. NUISANCE ⊂⊃75—ABATEMENT—EVIDENCE.

In a suit to restrain the operation of a cotton gin as a nuisance, evidence that the ordinary cotton gin makes and scatters dust, dirt, and lint, and makes a certain amount of noise in its operation, was admissible.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–184.]

6. NUISANCE ⊂⊃75—ABATEMENT—EVIDENCE.

In a suit to restrain the operation of a cotton gin as a nuisance, evidence that the site whereon the gin was located was the only available one in the neighborhood was properly excluded as not warranting defendants in establishing the nuisance.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–184.]

7. VENUE ⊂⊃22(1) — CHANGE OF VENUE — NONRESIDENCE.

In a suit to restrain the operation of a cotton gin as a nuisance, nonresident defendants are not privileged to be sued in the county of their residence where their superintendent of construction is a resident of the county and is actively interested in the establishment of the gin.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 35.]

8. TRIAL ⊂⊃215—INSTRUCTIONS—SPECIAL ISSUES.

In a suit to restrain the operation of a nuisance, an instruction to find for defendants if certain facts were found to be true was properly refused when the case was submitted upon special issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 481.]

9. TRIAL ⊂⊃237(6)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In a suit to restrain the operation of a cotton gin as a nuisance, an instruction to find for defendant unless the jury should "find and be satisfied" that the evils complained of are imminent and certain to occur was properly refused, since a preponderance of the evidence only was required.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 551.]

10. NUISANCE ⊂⊃75—ABATEMENT—INSTRUCTIONS.

In a suit to restrain the operation of a cotton gin as a nuisance, while the evidence must show that the evils anticipated are imminent

and certain to occur from the construction and operation of the gin, an instruction to that effect is properly refused.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–184.]

Appeal from District Court, Mitchell County; W. W. Beall, Judge.

Suit by P. C. Coleman and others against B. C. Moore and others for an injunction. From a decree perpetuating temporary injunction granted by the court below, defendants appeal. Affirmed, and rehearing denied.

Royall G. Smith, of Colorado, and Ben L. Cox, of Abilene, for appellants. Beall & Douthit, of Sweetwater, and Shepherd & Sandusky, of Colorado, for appellees.

HIGGINS, J. Appellees brought this suit to restrain appellants from erecting a cotton gin upon certain lots in the city of Colorado. A temporary injunction was granted from which an appeal was taken, resulting in an affirmance. 185 S. W. 936. Upon final trial, the injunction was perpetuated and this appeal was prosecuted. Plaintiffs were (1) persons whose residences were located in the near vicinity of the site of the gin whose proposed erection was sought to be enjoined, and (2) the trustees of three churches, likewise so located, two of them being within 80 feet of the gin's proposed location. For a statement of the allegations of the petition reference is made to the opinion rendered upon the former appeal.

Special issues were submitted to the jury as follows:

"No. 1. Is the gin sought to be erected by the defendants on lots Nos. 1 to 3, inclusive, in block No. 38, in the city of Colorado, Tex., such a gin and in such close proximity to the First Presbyterian Church, the Church of Christ or the Episcopal Church, or either of them, that the same, in the operation thereof, and the machinery therein, would make such noise, or create and send out such an amount of dust, dirt, or lint, that the same would materially interfere or injure such church congregation or congregations in their devotions or worship in such church or churches, and thereby become a nuisance to such churches or any of them?

"No. 2. If said gin be erected and operated by defendants on said gin site, then would there be deposited on such site or yards thereof such an amount of excrement and urine thereat by animals used in hauling cotton, cotton seed, and other materials to and from said gin, as to create from such deposits, vapors or noxious gases that would be carried to and into said churches, or any of them, to such an extent that the same would materially interfere and injure the members of such churches, or any of said churches, in the worship or devotional exercises, and thereby become a nuisance to such congregations, or any of them?

"No. 3. Is the gin sought to be erected by defendants on lots Nos. 1 to 3, inclusive, in said block No. 38, in the city of Colorado, Tex., such a gin and in such close proximity to the homes and residences of the plaintiffs or any of them that the same, in the operation thereof and the machinery therein, would make such a noise, or create and send out dust, dirt, or lint to such an extent that the same would materially interfere with or injure the plaintiffs or any of them in the comforts of their homes, or reason-

ably threaten the health of plaintiffs, or any of them, or their families, and thereby become a nuisance to plaintiffs or any of them?

"No. 4. If said gin be erected and operated by defendants on said gin site, would there be such deposit of excrement and urine thereat by animals used in hauling cotton, cotton seed, and such other materials to and from said gin as would create vapors or noxious gases therefrom, that would be carried to and into the homes and residences of plaintiffs or any of them, to such an extent that the same would materially injure the comfort of plaintiffs and their families, or any of them, in the enjoyment of their said home or homes, or reasonably threaten the health of them or any of them, and thereby become a nuisance to plaintiffs, or any of them?

"No. 5. If said gin be erected and operated by defendants on said gin site, would there be such deposit of excrement and urine thereat by the animals used in hauling cotton, cotton seed, and other materials to and from said gin, that flies would be created thereby, and caused to go into the residences and homes of plaintiffs or any of them, and thereby reasonably threaten the health of plaintiffs, their families, or any of them, thereby become a nuisance to plaintiffs or any of them?"

Each of the issues were answered in the affirmative. In the charge a definition of a nuisance was given, to which no exception is taken.

[1] It is assigned as error that the verdict of the jury is unsupported by the evidence. In support of this assignment, it is asserted that the operation of a gin is a legitimate business, not a nuisance per se, and that the construction thereof should not be enjoined unless the evidence shows that it will certainly and undoubtedly be attended with consequences making it a nuisance.

In a case of this nature an injunction should not issue unless it is shown that the evils anticipated from the construction and operation of the gin are imminent and certain to occur. It is not sufficient that they may probably do so. Joyce, Law of Nuisances, § 102; 1 High on Injunctions, §§ 743 and 787; Robinson v. Dale, 62 Tex. Civ. App. 277, 131 S. W. 308; Rouse v. Martin, 75 Ala. 511, 51 Am. Rep. 464.

An examination of the record discloses that there was ample evidence to warrant the jury in finding that the construction and operation of the gin would certainly result in at least some of the evils complained of and sufficient to constitute a nuisance. It will serve no useful purpose to incumber this opinion with a detailed statement of the testimony of the witnesses. We have carefully examined the same and have reached the conclusion that it is sufficient. The assignments complaining of the sufficiency of the evidence as well as that complaining of the refusal of a peremptory instruction are therefore overruled.

[2] The plaintiff Dr. Coleman, a medical expert, was permitted to testify that the operation of the gin upon the proposed site would injure the health of the occupants of the homes owned by the plaintiffs, and would destroy the comfort and pleasure of their homes, affect the value thereof, and make a noise very objectionable for a distance of 300 to 500 feet away; that in his opinion the noise would be detrimental to a home and disturb the quietude thereof.

It was objected to this testimony that it was a conclusion of the witness upon a question of law and fact and invaded the province of the jury. As to that portion of the testimony to the effect that the operation of the gin upon the proposed site would injure the health of the occupants of the homes owned by plaintiffs, we find that when a former witness (Sheperd) was upon the stand, the appellants, upon cross-examination, elicited substantially the same testimony from him. This being the case, the subsequent admission of Coleman's testimony over objection does not constitute reversible error. It has frequently been held that the erroneous admission of testimony is not reversible error where testimony of like character has been admitted without objection. See cases cited in 1 Michie, 815. The writer is of the opinion that Dr. Coleman, though a medical expert, should not have been permitted to testify that the operation of the gin would injure the health of the occupants of adjacent homes. He could properly testify to the effect upon health that noxious odors, vapors, dust, noise, etc., would have, but that it was improper to permit him to testify to his opinion or conclusion that the operation of a gin would have such effect. It was the province of the jury to deduct the conclusion that the establishment and operation of the proposed gin would create noxious odors, vapors, dust, noise, etc., and thereby impair or endanger the health of adjacent residents. But, however that may be, we all concur in the view that the admission of his testimony as to the effect it would have upon their health presents no reversible error for the reason indicated above.

[3] As to the remainder of Coleman's testimony, we are not altogether sure that it was improper. There are exceptions to the general rule that a witness must speak alone as to the facts. There are cases, where the question is not one of skill or science, in which witnesses are permitted to express their opinions. In such cases, the opinion given is not a speculative one, but is knowledge which may amount to certainty or may not. The conclusions or opinions of common observers, testifying to the result of their observations, as to common appearances or facts and a condition of things which cannot be reproduced and made palpable to a jury, are admissible under an exception to the general rule excluding the conclusion of a witness. McCabe v. San Antonio, etc., 39 Tex. Civ. App. 614, 88 S. W. 387; Cooper v. State, 23 Tex. 331; Rogers v. Crain, 30 Tex. 284; Railway Co. v. Daniels, 9 Tex. Civ. App. 253, 28 S. W. 548, 711; Railway Co. v. Brantley, 26 Tex. Civ. App. 11, 62 S. W. 94.

The exception is based upon the reason that the facts which constitute the cause from

which the opinion of the witness is deduced as an effect cannot themselves be so presented or communicated to the mind of the jury as to impart the knowledge actually possessed by the witness. Turner v. Strange, 56 Tex. 141; Railway Co. v. John, 9 Tex. Civ. App. 342, 29 S. W. 558. But it is immaterial whether or not the testimony falls within the exception to the general rule excluding opinion evidence. The witness had testified to all of the facts upon which his conclusions were based. It was all before the jury. In such case, to permit the witness to state his conclusion if erroneous, was harmless, and does not necessitate a reversal. Smith v. Eckford (Sup.) 18 S. W. 214; Railway Co. v. Warner, 60 S. W. 442; Railway Co. v. McElree, 16 Tex. Civ. App. 182, 41 S. W. 843; Davis v. Davis, 20 Tex. Civ. App. 310, 49 S. W. 726; Railway Co. v. Long, 26 Tex. Civ. App. 601, 65 S. W. 882; Bond v. Railway Co., 55 Tex. Civ. App. 119, 118 S. W. 867; Collins v. Chipman, 41 Tex. Civ. App. 563, 95 S. W. 666; Railway Co. v. Steele, 29 Tex. Civ. App. 328, 69 S. W. 171.

[4] There was no error in admitting the testimony of Coleman, based upon sufficient observation of the number of teams that would probably congregate at the gin daily, and as a consequence thereof that the ground would be covered and impregnated with the natural excretions of the teams, producing an odor and flies. We do not understand Robinson v. Dale, 62 Tex. Civ. App. 277, 131 S. W. 308, as an authority contrary to this view.

[5] And testimony that the ordinary cotton gin made and scattered dust, dirt, and lint, and made a certain amount of noise in their operation was admissible. Of necessity, plaintiffs could not know the exact kind of a gin that would be erected by defendants. If the defendants intended to erect a gin which would not scatter dust, dirt, and lint and make a noise, it was incumbent upon them to prove such fact. For the reasons indicated assignments 7 to 10 are overruled.

[6] The court did not err in refusing to permit the witness McSpadden to testify:

"That the defendants Moore & Anderson first contracted to buy some lots just west of the southwest corner of the courthouse tract for the purpose of erecting this gin, and that they were threatened with injunction proceedings by owners and occupants of residences lying north and northwest therefrom, and further that the title was found defective. That said witness would further have testified that he, acting for the plaintiffs, made a full search for other property in the city of Colorado in reasonable distance of the business portion of said town and suitable for a gin site, and was unable to find any such property outside of the fire limits of the city of Colorado, in which any structure would have to be of brick, concrete, or stone, which would render the cost of a gin building prohibitive. That there were a number of suitable sites for a gin in said city of Colorado in blocks wholly devoted to residence purposes and situated nearer to residences and nearer to more residences than is the site involved in this suit."

The facts which the witness proposed to testify to would not have warranted defendants in establishing and maintaining a nuisance to plaintiffs. We do not regard as in point the cases cited in support of the admissibility of this evidence.

[7] The eleventh and twelfth assignments relate to question of venue. The defendants Moore & Anderson owned the site of the proposed gin, and were proposing to erect the gin upon the same. They lived in Taylor county. The suit was brought in Mitchell county, where the defendant McSpadden resided. Moore & Anderson filed a plea of privilege asserting the right to be sued in the county of their residence. They averred that McSpadden had been fraudulently joined as a party defendant for the purpose of conferring jurisdiction in Mitchell county. The evidence shows that McSpadden was superintendent of construction for Moore & Anderson, and manager of the work in erecting the gin, being paid a salary. This shows that he was an active participant in the establishment of the proposed nuisance, and as such he was a proper party defendant in a suit to enjoin the establishment thereof. Furthermore, Moore & Anderson, in their plea of privilege, alleged that McSpadden had a contract to thereafter purchase an undivided interest in the property. This allegation showed that he was interested in the subject-matter of the litigation, and therefore a proper party.

What has heretofore been said disposes of the thirteenth assignment, which complains of the admission of the testimony of W. E. Watson.

[8] There was no error in refusing special charge No. 2, wherein the jury was instructed to find for the defendants if they found certain facts to be true. Charges of this nature are not proper when the case is submitted upon special issues. In cases so submitted a general charge to find for or against a party is not permissible.

[9] Error is assigned to the refusal of this special charge:

"You are further instructed that, unless you should find and be satisfied that the purported evils and threatened injuries complained of by plaintiffs in their petition are imminent and certain to occur when said gin is constructed and operated by defendants, at the site and in the manner proposed by them, then you will answer the special issues propounded to you by the court in the negative, in such instances as you so fail to find and be satisfied."

This charge was properly refused for two reasons. In the first place, the requirement that the jury should "find and be satisfied" was not a proper instruction. It is the duty of the jury to find in accordance with the preponderance of the evidence, and the proof need not be to their satisfaction. Railway Co. v. Matula, 79 Tex. 577, 15 S. W. 573; Railway Co. v. Everett, 99 Tex. 269, 89 S. W. 761; Wallace v. Berry, 83 Tex. 328, 18 S. W. 595.

[10] Furthermore, while in cases of this

nature, the evidence must show that the evils anticipated are imminent and certain to occur from the construction and operation of the gin, yet it would not be proper to so instruct the jury. Baylor v. Hopf, 81 Tex. 637, 17 S. W. 230; Howard v. Zimpelman (Sup.) 14 S. W. 59; Western, etc., v. Hillyer, etc., 167 S. W. 816, and cases there cited. In the cited cases, it was attempted to ingraft a parol trust upon a deed absolute upon its face. In such cases, the trust must be clearly and convincingly shown by the evidence, yet it is held to be improper to instruct the jury to that effect. The same rule is applicable here.

Special charge No. 4, the refusal of which is made the basis of the sixteenth assignment, was argumentative, and was further objectionable in instructing that the operation of the gin would not be a nuisance unless it was certain that such operation would result in one or more of the anticipated evils. As is held above, such an instruction would not be proper.

Affirmed.

### On Rehearing.

The statement in original opinion that two of the three churches were within 80 feet of the gin's proposed location is incorrect. The evidence shows it is a distance of 180 feet to the property line of the nearest church.

In support of our holding that charges of the nature of defendant's special charge No. 2 should not be given when the case is submitted upon special issues, we cite Cole v. Crawford, 69 Tex. 124, 5 S. W. 646; Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132, s. c., 93 S. W. 1007; Railway Co. v. Jones, 175 S. W. 488; LaGrone v. Railway Co., 189 S. W. 99; Southern Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638; Pacific Express Co. v. Rudman, 145 S. W. 268; Hengy v. Hengy, 151 S. W. 1127; Southerland v. Railway Co., 40 S. W. 193; Crosby v. Stevens, 184 S. W. 705.

The motion for rehearing is overruled.